Our first case for this morning will be United States v. Ferguson. We'll hear from you, Mr. Dugney. May it please the Court. There are two issues for this Court to consider today. The first is whether or not the District Court gave due deference to the Supreme Court's teaching in Miller, Roper, and Montgomery. And the second issue is whether or not the District Court adequately explained its sentence 17 years above the guidelines and 15 years above the joint recommendation of the parties. The first issue is the meteor of the two. Montgomery and Miller, they give us a substantive right. They give us a direct teaching about how District Courts and really all judges throughout the country have to view youth when doling out punishment. Youth is categorically mitigating. It's sui generis in that. The Supreme Court has never found or never held that one single fact is actually mitigating. And that mitigation carries over to how the District Court has to consider a sentencing. What sign is there that this District Judge didn't do that? I mean, he knows how old Ferguson was. I mean, obviously, the crime was unbelievably bad, but you don't seem to be arguing that there's some particular discount that goes with youth, and I don't see where the judge failed to recognize that he was immature. We don't think that there's a particular 20 percent off or whatever it would be. But the District Court didn't. If you look at pages 34 through 35 of the transcript, that's where the court says, look, you're young. And we consider that. We consider that among other factors, including drug use, including. And isn't that correct? It is a factor, and you say it's a factor on the mitigating end of the scale, but it's not the only factor. And he says that there's no automatic free pass for people who are below the age of 27 or 28, which is roughly where maybe the brain is finally mature. That's right. There is no free pass, but understanding that it's categorically mitigating is different than saying, look, it's just part of the whole hodgepodge that we consider at sentencing. What the Supreme Court has done is said, right here, when it comes to understanding your character, your character is not formed when you're a minor. There is nothing in there that says, you know, you're retrievable. We have no, you know, you just have to be locked away and warehoused. That the Supreme Court has said. Then we have to look at how does it explain the actions. Well, the court struggles. I don't even understand this excuse from your defense counsel. No, it shows how impetuous he was. That it's a Tuesday afternoon, he's just walking around, and then he decides to steal a car. Those are the teachings that the court would have to say, I understand this. The Supreme Court has explained that this is mitigating. And I understand it in light of these factors. Now, whether or not other factors might drive a sentence north of the joint recommendation, that's for the district court to do. But isn't that what he says? I mean, he talks about he was 17, his brain wasn't fully developed, but then the sentence that you're focusing on, I don't think that we do not hold people responsible. We certainly consider the youth at the time, and we consider other factors. What's wrong about that? Because it doesn't bleed into all of it. So if he had just said, we consider the youth as a mitigating factor at the time, but we also consider other factors, that would be correct? That would be a correct statement of the law, and it would also have to be part of the rest of his reasoning. Where he'd say, I don't understand why you did this, but I understand you're a youth, and I understand that this is kind of impetuous, and I understand that you're dangerous right now, Mr. Ferguson. You scare me. But you know what? You're going to be a different person when you hit 25. You can look at this court's or Judge Posner's dissent in McKinley v. Butler, and it's very clear. He brings out the statistics. This is something that we know is going to change in a person. Now, had the court wrestled with those facts, had it wrestled with Montgomery, even had it brought out, this is what the Supreme Court is telling us about the science of how I'm supposed to sentence. But then said, I'm convinced on other factors. These other factors really weigh to me. But it has to be that the court, and really the public, and this court, understand exactly where the court was going. But there in this transcript, it's not so much that the court embraced McKinley or Montgomery, it's saying, I guess I can't give you a life sentence anymore because you're two months shy of your 18th birthday. Nobody has ever given Mr. Ferguson a life sentence. Nobody has contemplated it. And the sentence here is 15 years, nearly one-third lower than the last time around. Two district judges have sentenced him, and now you want us to send it back to a third district judge to try again, right? Yes. Because of the nuances in the way this was explained? That's the second argument. Well, it's not clear to me how distinct they are. Correct. One bleeds into the other. But if you were looking at this court's jurisprudence, and we set out the times that this court has said, you know what, that's a pretty extreme variance from the guidelines. The explanation the district judge provided here was, in essence, to compare this to an attempted murder. Why is that not a reasonable way to explain and quantify the district judge's frustration with the guidelines, given the way the case was charged? Well, the case was charged the only way it could be charged. There wasn't an attempted murder that would have allowed for federal jurisdiction that we'd say, okay, well. No, but we expect district judges to focus on conduct, not just the niceties of the charges. A life sentence is authorized, and we have affirmed life sentences on 924C charges. Correct. So what's wrong with the district judge's use of murder guidelines in treating this as if it were an attempted murder? Well, there are two. The first is he doesn't actually say that this is how I'm going to go. He says, you know, this is kind of what's in my idea. This is what's in my wheelhouse. You don't think he says that by the time at the very end? He says, you know, he's trying to do the Garcia-Segura inquiries, and he's saying, you know, do you have anything else to say about, he says over on page 54, one of the things I brought up that neither counsel did was the use of the guideline to look at the murder guideline, the attempt. I certainly don't want to foreclose you from making any argument if you think that's overstating or a misstatement of facts. And, you know, the defense counsel says, that's fine. I don't have anything else to say about that. Because it wasn't clear that that... But it's guidance. It's not, he wasn't in a straight jacket, but he says I'm guided by this level of punishment because of the underlying facts here. And being guided by and then allowing for that to actually be the reasoning that this court reviews. It's not enough for this court to just guess at what he might have been doing or say, you know, there are indications that he's looking at this higher guideline and therefore a life sentence would be appropriate. But it doesn't come down to where he's actually giving this sentence. Why 15 years above the joint recommendation? Why 17? What would the guideline range be for attempted murder with acceptance of responsibility? Is it 20 year max? It would be 240 months. No, no. Forget about statute 20 maximum. Just guidelines. Depending on whether or not you gave the whole, you know, like did all acts in furtherance, it would be a 43. For attempted murder? Yes. Depending on if you, there is a, you get minus. With acceptance of responsibility. Yes, but you get a minus 3 if you didn't do all acts that would, you know, constitute, if you didn't actually shoot the person. So it's a complicated question depending on what factors you want to have in there. And just the guidelines alone, I mean, we're talking about two small paragraphs, two small paragraphs that would have to be weighed against everything that the Supreme Court has said in Miller and Montgomery. Because you'd say, yes, this is an attempted murder. But you know what? Your impetuousness, I understand from that. And even though the guidelines tell me this is an attempted murder, I have to look at your character. And your character is something that's not formed yet. It's something that I don't know if you're irretrievable. I don't know if you need a life sentence. I, in fact, know you don't need a life sentence. Why do you keep saying this is a life sentence? Because if the guidelines are going to be 43. Because a 35-year sentence is what we're actually looking at. It's a life sentence, but nobody has ever suggested a life sentence, although it would be permissible. So he'll be 50-some-odd years old if he gets discounts for good behavior and so on. So that's far from a life sentence. It's still very heavy. Everybody agrees that. But this was a spectacularly vicious crime. It was vicious. And two district judges have said these guidelines are totally inadequate for dealing with this. In which case, if they wanted to work within the guidelines, then allow for it. The first opinion from this court showed we could actually go up another four levels, six levels for the injury that it would be, and that would bring us to the 20-year recommendation that the parties jointly came to. That would actually be what would do it. No, that only applies to the carjacking, not to the discharge. That's the problem with the guidelines here. And so you've got the district judge saying this is completely inadequate. That wasn't his phrase, but that's the substance of it. This looks a lot like an attempted murder. They have a lot of discretion. They do have a lot of discretion, but that discretion always has to be tailored to what the Supreme Court has said. You can't take the guidelines and say, you know what, this is a normal 25-year-old kid, 25-year-old. Instead, the Supreme Court says those are the guidelines. Under 3553A, we're carving out when it comes to the youth factor, the impetuousness, your ability to be retrieved or redeemed. Those factors have to be considered. So even if you were to say the guidelines are inadequate, the guidelines have to account for exactly what the Supreme Court has taught, and the court would have to balance that under 3553A. All right. Thank you very much. Do you have a question? I'm sorry. Do you have a question? No. All right. Thank you. Mr. Proctor. Thank you, Your Honors. May it please the Court. I think, Judge Wood, you hit it on the head, is how did the judge here fail to recognize youth when the judge expressly addressed all of the arguments that were presented by Mr. Ferguson in the district court? Among other things, and getting besides the waiver argument, just getting into the meat of it, Mr. Ferguson had argued, well, you need to consider impulsiveness, impetuousness of the crime. Well, the district judge here got into that. He got into those specifics. He said, well, I consider impetuousness. I consider bad judgment. But then the court also discussed, well, here we have a person who waited. He waited while Ms. Ferguson or Ms. Spencer unlocked her car, then snuck up on her, demanded the keys, demanded the keys twice. She gave him the keys, and he shot her. He shot her after he gave him the keys. Then he went around, he drove around with his girlfriend. He almost ran over Ms. Spencer trying to get out of the car. I'm familiar with the facts. The puzzle to me, Mr. Proctor, is the government's recommendation here, especially after it became so evident through the first sentencing that the guidelines really didn't seem to fit the circumstances of this particular crime. Your Honor, my office came to a conclusion during the plea negotiations here that we were going to cap our recommendation at 20 years. The government has honored its obligations under the plea agreement, and district judges have disagreed with that. Okay. Getting back, the district judge addressed impulsiveness in that aspect of Ferguson's argument that district courts need to consider that when somebody like Ferguson happens to be a few weeks under the age of 18.  Is the district judge obliged to give some discount for youth, or is the district judge just supposed to say what this judge did? I recognize that you're young, but as far as I'm concerned, other things outweigh that, or maybe this district judge did give him, compared to the earlier 50-year sentence, a 15-year discount so that he'll be, as I said, somewhere between 15 and 55 probably by the time he gets out when all is said and done. So some life left to live, not very much. Certainly. And on that point, I did check the Bureau of Prisons. They have an estimated release date around 2045, so he'd be just shy of 50, assuming good time credit. The way I see the Miller, Roper, Montgomery cases fitting into this is that we don't have a life sentence here. We don't have a life without parole. What they do provide is, I think in the Cunningham-type language, they provide a mitigation argument that the court must consider, a mitigation argument of recognized validity. And that's what was presented here. The district court considered Mr. Ferguson's argument that, okay, he's a youth, and the Supreme Court has talked about brain development and these other characteristics of youth, so you must consider that, District Judge. That's why you should consider it as a mitigation argument. The district court hears, all right, I'm considering those things. I'm considering the Supreme Court's comments regarding brain development. I'm considering impetuousness. I'm considering development of a person's personality. And he went through it. He discussed various factors that went into those, not only the crime. So it's your position that the Supreme Court isn't really, I mean, I think that's maybe the legal difference between you and Mr. Bugney. He thinks there's basically a legal requirement that you go down a little bit by some unspecified amount for people who are, I mean, we're saying below the age of 18. I realize he was close to 18. But against the backdrop of the actual brain development, there's still some way to go even when someone hits the age of 18. And it's your position that it's sort of like, you know, Rita or the other cases. As long as you consider it, that's all you have to do. You can reject it. And the question is, would rejecting youth as a mitigating factor be incompatible with the Supreme Court's cases? If the district court had said, I'm going to sentence you the same way as if you were 17 or 35, we might have a problem. But that's not what happened here. So I think that that's possible. And I hope that answers your question. But here the district judge did get into the aspects of youth that Mr. Ferguson felt were mitigating. He evaluated them against the factors under 3553A. And most importantly, I think that the way this works, Mr. Ferguson, like any defendant, is entitled to an individualized assessment under the 3553A factors. And that's what he received here. The judge did take youth into consideration. He took a lot of other factors into consideration, reaching his determination that 35 years was appropriate in this case. I will make just one comment on the guidelines. With acceptance of responsibility on a murder guideline, my calculations, he would get a small discount off of 43. But we'd add in some more. He did, under Chapter 3, he did do reckless flight after being chased. So at a minimum, it would be 360 to life plus 10 years on count two. So we're at least well over 40 years on guidelines if we were to apply the murder guidelines. And I do agree. I think the court has hit it on the head. The judge used the murder guidelines as an explanation to say why the carjacking guidelines were completely off base in his view here. And that provides a very good explanation, I think, for where the judge was coming from. In addition to, as I mentioned, the facts of this case, the judge also talked about the need for deterrence and how a sentence any less than 35 years would not fit the crime, would not demonstrate to the community the type of deterrence that was needed. He's talking about general deterrence there, I take it, and the rash of carjackings in Milwaukee, which sounds unfortunate. Yes, Your Honor. I think the judge was hammering that as well. But also, the judge really focused on the risk that Mr. Ferguson presents to the community. Mr. Ferguson, his conduct in this case, his conduct leading up to this case, he presented an incredible danger to the community. The district court said nothing less than 35 years in this case gives me satisfaction that I'm able to protect the community and achieve the other pertinent goals of sentencing with this sentence. In the absence of further questions, why am I brief? I would just move one, and then Judge Hamilton touched on it. You came up with 20 years. I didn't quite understand what you said when you had that joint recommendation. I won't call it a joint recommendation, Your Honor. The government had agreed to 20 years as part of the plea agreement. During the first sentencing, Mr. Ferguson came in and asked for 15 years. That's what the first judge gave him, 50 years. We had asked for 20. When we came back around for the second sentencing, the government was still bound by the plea agreement to recommend 20 years. The government was what? Bound by the plea agreement to recommend 20 years, and that's what we did. All right. Thank you, Your Honors. All right. Thank you very much. Mr. Bugney, your time ran out, but I'll give you a final minute. Thank you. Two brief points. One, his discussion of the brain development is also in the context of, well, psychiatrists also tell me they're a sociopath and that there are sociopaths in this world. It's not a true evaluation. This was more said of a tongue-in-cheek. You know, yeah, the Supreme Court has said this, I guess I can't do it. You know, yeah, there are psychiatrists who say this, but that doesn't stop us from having to punish you. That doesn't stop us from saying there are sociopaths in this world. It's not the true evaluation that we'd expect from something of Miller where you're really weighing these factors. And the second part is, if there's going to be that this is the justification, I'm using the murder guidelines, and this is how it's going to be. When this court has seen an extreme variance from the guidelines, it has had a lot more to go with, a lot more to justify it, whether it's the Gooden case where you had a 22-page sentencing memo or a sentencing decision, whether or not it's Ellis where you're really getting into, like, this is just the worst dude I've seen. And that's what this court should demand. And I get it that we're asking for a third bite at the apple, but we're asking for a third explanation that weds to it. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.